Gordon Law LLP
Michael R. Gordon, Esq.
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone:    914.232.9500
Fax:           914.992.6634
Email:         mgordon@gordonlawllp.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

PECOS RIVER TALC LLC,                          Civil Action No.: 1:25-mc-00456

               Plaintiff,

    v.

NORTHWELL HEALTH, INC.,

               Defendant.

--------------------------------------------------------

**NORTHWELL'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

## <u>TABLE OF CONTENTS</u>

*Page*

**Preliminary Statement**……………………………………………………………………...1

**Statement of the Case**……………………………………………………………………1

    **A.  The background procedural history**……………………………………………1

    **B.  The Northwell Subpoena and Northwell's responses and objections**……………6

**Argument**…………………………………………………………………………………9

    **THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE IT SEEKS IRRELEVANT DOCUMENTS THAT ARE NOT PROPORTIONATE TO THE EMORY LITIGATION AND WILL UNDULY BURDEN NON-PARTY NORTHWELL LITIGATION**…………………………………………………………..9

        **A.    The legal standards**……………………………………………………..10

        **B.    Plaintiff did not take reasonable steps to reduce the burden of the Northwell Subpoena on Northwell, as required by Fed. R. Civ. P. 45(d)(1)**…………………………………………………13

        **C.    The Northwell Subpoena seeks irrelevant documents**………………14

        **D.    The Northwell Subpoena is not proportionate to the needs of the Emory Litigation**……………………………………………16

        **E.    The Northwell Subpoena imposes an undue burden on Northwell**….19

            **1.  The Northwell Subpoena imposes a resource burden on Northwell**……………………………………………………...19

            **2.  The Northwell Subpoena calls upon Northwell to produce documents protected by the attorney-client privilege**……………22

            **3.  The Northwell Subpoena calls upon Northwell to produce highly sensitive medical records**……………………………………23

**Conclusion**……………………………………………………………………………25

i

## TABLE OF AUTHORITIES

*Cases*                                                                                   *Page(s)*

*Adomni, Inc. v. Ct. Media, LLC*,
    2024 U.S. Dist. LEXIS 210340, 2024 WL 4981510 (S.D.N.Y. Nov. 19, 2024)............12

*Allstate Ins. Co. v. All Cty., LLC*,
    2020 U.S. Dist. LEXIS 176297 (E.D.N.Y. Sept. 22, 2020)...................................17

*Avago Techs. U.S., Inc. v. IPtronics Inc.*,
    309 F.R.D. 294 (E.D. Pa. 2015)...................................................................12

*Bell v. Am. Int'l Indus. Inc.*,
    2021 U.S. Dist. LEXIS 262389 (M.D.N.C. Feb. 25, 2021)...................................23

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004).....................................................................9

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    2010 U.S. Dist. LEXIS 33430 (S.D.N.Y. April 5, 2010).....................................16

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1988).........................................................................24

*Dow Chemical Co. v. Allen*,
    672 F.2d 1262 (7th Cir. 1982)........................................................................24

*Farnsworth v. Procter & Gamble Co.*,
    758 F.2d 1545 (11th Cir. 1985).......................................................................24

*Fields v. Lilly*,
    2:13-cv-0035, 2015 U.S. Dist. LEXIS 191536 (M.D. Ala. Mar. 26, 2015)................25

*GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*,
    2025 U.S. Dist. LEXIS 40029 (S.D.N.Y. March 5, 2025)...................................13

*Gilead Scis., Inc. v. Khaim*,
    348 F.R.D. 146 (S.D.N.Y. 2024)...............................................................11, 17

*Girard St. Inv. Holdings LLC v. Venezuela, S.A.*,
    No. 23-cv-10772, 2024 U.S. Dist. LEXIS 213885........................................10, 11

*Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*,
    2024 U.S. Dist. LEXIS 178902, 2024 WL 4355597 (S.D.N.Y. Oct. 1, 2024)............12

*In re Biovail Corp. Secs. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007)……………………………………………………..11

*In re Candor Diamond Corp.*,
    26 B.R. 847 (Bankr. S.D.N.Y. 1983)………………………………………………..12

*Johnson & Johnson v. Northwell Health Inc.*,
    N.Y. Co. Index No. 153527/2024……………………………………………………9

*LLT Mgmt. LLC v. Emory*,
    766 F. Supp. 3d 576 (E.D. Va. 2025)…………………………………………..2, 3, 13

*Metro Light & Power LLC v. Furnlite*,
    2025 U.S. Dist. LEXIS 127361 (S.D.N.Y. July 1, 2025)…………………………….1

*Milner v. City of Bristol*,
    2020 U.S. Dist. LEXIS 188770 (D. Conn. Oct. 13, 2020)……………………………16

*Moline v. Pecos River Talc LLC*,
    2025 U.S. Dist. LEXIS 201669 (S.D.N.Y. Oct. 10, 2025)…………………………..4, 5

*Morocho v. Stars Jewelry by The A Jeweler Corp.*,
    345 F.R.D. 292 (S.D.N.Y. 2024)…………………………………………………….9

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
    2003 U.S. Dist. LEXIS 23179 (S.D.N.Y. Dec. 30, 2003)………………………11, 12

*Pecos River Talc LLC v. Emory, et al.*,
    Civ. No. 4:24-cv-75 (E.D. Va.)……………………………………………………1

*Phillips Petro. Co. Venezuela Ltd. v. Girard St. Inv. Holdings LLC*,
    2025 U.S. Dist. LEXIS 44335 (S.D.N.Y. March 11, 2025)………………………...10

*Rice v. Reliastar Life Ins. Co.*,
    2011 U.S. Dist. LEXIS 130302 (M.D. La. Nov. 10, 2011)…………………………9

*Securitas Elec. Sec., Inc. v. Debon*,
    2022 U.S. Dist. LEXIS 38810 (S.D.N.Y. March 4, 2022)…………………………16

*State Farm Mut. Auto. Ins. Co. v. Khait*,
    2023 U.S. Dist. LEXIS 171968 (E.D.N.Y. Sept. 26, 2023)………………………9

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
    MDL No. 2100, 2011 U.S. Dist. LEXIS 132056 (S.D. Ill. Nov. 15, 2011)………..25

<u>Rules & Statutes</u>

Fed. R. Civ. P. 26(b)(1)……………………………………………………..11, 16, 17

iii

Fed. R. Civ. P. 45 (d)(1)………………………………………………………………….10, 11, 13

## Preliminary Statement

Defendant Northwell Health, Inc. ("Northwell") opposes the motion by Plaintiff Pecos River Talc ("Plaintiff") to compel Northwell to produce documents responsive to a subpoena *duces tecum* (the "Northwell Subpoena") that Plaintiff issued, at the last minute, in a Virginia federal court action in which Northwell is not a party. The motion should be denied because, as more fully discussed below, the Northwell Subpoena is overbroad, unfocused, burdensome, and seeks privileged documents, documents that are not necessary to the underlying action in which the Northwell Subpoena was issued, and sensitive medical records that Northwell has a strong interest in protecting. In short, by its motion, Plaintiff is asking to be excused from the mandate of Fed. R. Civ. P. 45 (d)(1) that the party issuing a non-party subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Not only that, Plaintiff is asking this Court to ignore the bedrock rule that when considering a motion to enforce a non-party subpoena, a court should be "particularly sensitive to the undue burden and significant expense imposed on non-parties, who have no stake in the underlying litigation." *See Metro Light & Power LLC v. Furnlite*, 2025 U.S. Dist. LEXIS 127361, *6 (S.D.N.Y. July 1, 2025). Because Plaintiff's motion to compel seeks to unduly burden, in a number of ways, including imposing significant expense on Northwell, a non-party that has no stake in the underlying litigation, the motion should be denied.

## Statement of the Case

**A.    The background procedural history**

Plaintiff issued the Northwell Subpoena in a lawsuit it brought for fraud, false advertising, and trade libel against three doctors in the United States District Court for the Eastern District of Virginia, *Pecos River Talc LLC v. Emory, et al.,* Civ. No. 4:24-cv-75 (E.D. Va.) (the "Emory Litigation"). Northwell is not a party to the Emory Litigation. After the fraud

and false advertising claims were dismissed on February 7, 2025, Plaintiff was left with one claim, for trade libel under New Jersey law.[1] The theory of that claim is that the defendants in the Emory Litigation (collectively, the "Emory Defendants") authored an article (the "Emory Article") containing false information about the connection between malignant mesothelioma and cosmetic talc to promote themselves as plaintiff-side experts in cosmetic talc cases. *See LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d at 587) ("LLT's Complaint posits that the defendants knowingly misled the public about the safety of cosmetic talc products, but that the defendants' real goal was to create a body of scientific literature to appease the plaintiffs' bar, who hired the defendants as expert witnesses in tort cases against LLT.").

Plaintiff contends on its motion to compel that to prevail on its trade libel claim in the Emory Litigation, it must prove, *inter alia*, that the Emory Defendants acted with "actual malice," which, Plaintiff alleges, is evident from an alleged coordination between the Emory Defendants and Dr. Jacqueline Moline, a physician who has studied the connection between cancer and cosmetic talc and who has testified as an expert for plaintiffs in cosmetic talc litigation. *See* Plaintiff's Memorandum of Law in Support of its Motion to Compel ("Pltf's Mem," ECF Doc. No. 3) at 2.

---

[1]     Plaintiff conceals the fact that, in May 2024, when it commenced the Emory Action, it originally filed three claims, two of which were dismissed, one as untimely and the other as not stating a claim. *Compare LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576, 587 (E.D. Va. 2025) ("Count II (fraud) is barred by the statute of limitations … . Count III fails to state a claim for false advertising. That leaves Count I [trade libel], which survives the time-bar and standing analyses and adequately states a claim on which relief can be granted.") *with* Pltfs' Mem. at 2 ("Pecos River filed a trade libel claim against the authors of the Emory Article in the Eastern District of Virginia based on the Article's false statements.").

Plaintiff's central allegation in the Emory Litigation is that the Emory Article falsely states that the only known exposure to asbestos of the 75 cancer patients who were the subject of the Emory Article was cosmetic talc and that those 75 patients were "additional" to 33 subjects discussed in an earlier study by Dr. Moline. *See LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d at 588; *see also* Pltf's Mem. (ECF Doc. No. 3) at 5 ("The [Emory] Article states that for all 75 subjects, their 'only known exposure to asbestos' was cosmetic talc. … The Article goes on to state that these exposures were assessed by reviewing 'sworn deposition testimonies and answers to sworn interrogatories.' *Id.* And the Article also states that all of its subjects were 'additional' to the subjects in a similar paper authored by Dr. Jacqueline Moline—an employee of Northwell. All three of these statements are false.").

Put simply, Plaintiff alleges in the Emory Litigation that the Emory Defendants are liable for trade libel because the Emory Article falsely stated that (*a*) the research subjects' only known exposure to asbestos was via cosmetic talc, (*b*) those exposures were "assessed" by reviewing deposition testimony and interrogatory answers, and (*c*) all research subjects were additional to Dr. Moline's research subjects. *See* Pltf's Mem. at 2 ("Pecos River filed a trade libel claim against the authors of the Emory Article in the Eastern District of Virginia based on the Article's false statements."). Plaintiff apparently intends to prove the alleged knowing falsity of these statements through communications that show coordination between the Emory Defendants and Dr. Moline, "orchestrated by the law firm Simon Greenstone Panatier [SPG], which represents plaintiffs in asbestos litigation." *See* Pltf's Mem. at 7. Plaintiff's focus is thus "the process the Emory Article authors used to attempt to ascertain any overlap between the subjects of [the Emory] Article and the subjects of Dr. Moline's similar paper," an issue that Plaintiff claims is "critical" to its trade libel claim in the Emory Litigation. *See* Pltf's Mem. at 2.

On August 15, 2025, Plaintiff served Dr. Moline with a subpoena in the Emory Litigation (the "Moline Subpoena") to testify and produce documents. Dr. Moline objected to the Moline Subpoena but agreed to conduct a reasonable search for documents responsive to certain requests, as narrowed by her objections and responses. When she found no responsive documents after performing the searches that she agreed to undertake, Dr. Moline asked Plaintiff to withdraw its demand for her deposition. When Plaintiff refused to do so, Dr. Moline moved to quash the Moline Subpoena. *See Moline v. Pecos River Talc LLC*, S.D.N.Y. Case No. 1:25-mc-00391 (the "Moline Deposition Subpoena Litigation").[2] In her memorandum of law in support of her motion to quash, Dr. Moline summarized the Moline Deposition Subpoena Litigation as follows: "Dr. Moline filed written objections to the twelve categories of documents demanded by the Subpoena—most of which sought broad productions unrelated to the discrete issues in the Emory Action—but agreed to conduct a reasonable search for certain documents and communications relating to the Emory Article. She did not locate any such documents. Therefore, she asked J&J to withdraw the Subpoena's demand for her deposition. J&J refused, necessitating this motion." *See* Moline Deposition Subpoena Litigation, Doc. No. 5 at 2.

---

[2]      On page 11 of its Memorandum of Law in support of its motion to compel (Moline Deposition Subpoena Litigation, ECF Doc. No. 5), Plaintiff mentions the Moline Subpoena but omits that document from its vast collection of 43 supporting exhibits. Plaintiff also fails to point the Court to where the Moline Subpoena can be found on the ECF docket of Dr. Moline's motion to quash the Moline Subpoena. These omissions were no doubt intended to soft peddle if not cover up the difference between the two subpoenas: the Moline Subpoena sought testimony and documents, while the Northwell Subpoena seeks only documents. *See infra*, fn. 6 for a fuller discussion of the impact of the difference between the two subpoenas. *See also* the Moline Deposition Subpoena Litigation, ECF Doc. No. 6-1 (the Moline Subpoena), ECF Doc. No. 6-3 (Dr. Moline's Responses Objections to the Moline Subpoena), and ECF Doc. No. 5 (Dr. Moline's Memorandum of Law in Support of her motion to Quash).

Dr. Moline moved to quash the deposition component of the Moline Subpoena on the grounds that it sought information irrelevant to the Emory Litigation, was not proportionate to the needs of the Emory Litigation, and was unduly burdensome and harassing. *See generally* Moline Deposition Subpoena Litigation, ECF Doc. No. 5. Critically, Dr. Moline did not move to quash the document portion of the Moline Subpoena because she had served objections and responses in accordance with Rule 45(d)(2)(B), making it incumbent on Plaintiff to move to compel pursuant to Rule 45(d)(2)(B)(i) if it found those objections and responses inadequate. Plaintiff never filed such a motion or cross-motion, and the burden imposed by Plaintiff's document requests was therefore never raised or briefed in the Moline Deposition Subpoena Litigation. Indeed, the burden argument Dr. Moline made in support of her motion to quash was strictly limited to the burden she would face in preparing for and testifying at a deposition given that she was not a party to the Emory Action and had no involvement with the Emory Article. *See generally* the Moline Deposition Subpoena Litigation, ECF Doc. No. 5. This procedural fact undermines Plaintiff's contention that this Court should look to Judge Engelmayer's decision in the Moline Deposition Subpoena Litigation in deciding whether to grant Plaintiff's motion to enforce the Northwell Subpoena.

Dr. Moline's motion was denied on October 10, 2025 by Judge Engelmayer, who held that (*a*) the Moline Subpoena called for relevant information and (*b*) Dr. Moline's burden argument failed because it was predicated on an alleged lack of relevance. *See Moline v. Pecos River Talc LLC*, 2025 U.S. Dist. LEXIS 201669, *8 (S.D.N.Y. Oct. 10, 2025) (the "Moline-Engelmayer Decision"). As noted, Judge Engelmayer did not address the burdensomeness of the subpoena's document requests or their proportionality to the needs of the Emory Litigation as those issues were not before him. *Id.* He only looked at burden through the lens of relevance; he

5

was not asked to and did not consider the typical indicia of burden, which is implicated by

Plaintiff's motion to compel compliance with the Northwell Subpoena.

On October 30, 2025, Dr. Moline testified at the deposition Judge Engelmayer directed in

the Moline-Engelmayer Decision.[3]  Dr. Moline testified, in pertinent part, that:

- she searched her emails for any mention of Emory, Kradin, or Maddox [the Emory Defendants] … and "did not find any;"

- she "ha[s] not communicated with anyone prior to publication of [her] articles";

- she has had "no communications with any plaintiff's counsel about [a journal article she wrote in 2020] before it was even submitted to the journal;"

- she has not "ever communicated with Dr. Kradin about the Emory article;"

- she has "no recollection of any communication from [one of the shareholders of SPG, Leah Kagan] about potential overlap between Moline 2020 and the Emory article;" and

- she has had no communication with [the authors of the Emory Article, … didn't know they were writing a paper, and "didn't provide any preprint publication copy [of her own article] to the authors of the Emory article."

Gordon Aff., Exh. 1 at 37:22-24, 51:6-11, 54:9-11, 68:11-15, and 90:7-13.

## B.    The Northwell Subpoena and Northwell's responses and objections

On or about September 9, 2025, Plaintiff served the Northwell Subpoena on Northwell.

*See* ECF Doc. No. 4-32.  The Northwell Subpoena consists of twelve broad categories of

documents, each of which begins with the word, "all," and each of which is modified by

definitions that balloon the subjects of the Northwell Subpoena tremendously; as defined in the

Northwell Subpoena, Dr. Moline, the Emory Defendants, the authors of articles other than the

---

[3]    *See* Exhibit 1 to the accompanying Declaration of Michael R. Gordon, dated November 3, 2025 (the "Gordon Aff."), the transcript of Dr. Moline's October 30, 2025 deposition.

Emory Article, and others mean not only those individuals but also their respective representatives, members, agents, consultants, experts, attorneys and anyone acting on their behalf.  Here are the twelve categories of the Northwell Subpoena:

1.    All Documents and communications related to the Emory Article.

2.    All Documents and communications related to any efforts to determine whether any Study Participant or Potential Study Participant of the Emory Article was a subject of the Moline Article.

3.    All Documents and communications related to any efforts to ensure that any Study Participants or Potential Study Participants of the Emory Article were not subjects of the Moline Article.

4.    All communications between Dr. Jacqueline Moline and Dr. Richard Kradin, Dr. John Maddox, Dr. Theresa Emory, and/or Dr. Siobhan Cashman related to the Emory Article.

5.    All communications between Dr. Jacqueline Moline and Dr. Richard Kradin, Dr. John Maddox, Dr. Theresa Emory, and/or Dr. Siobhan Cashman related to the Moline Article.

6.    All communications between Dr. Jacqueline Moline and Dr. Richard Kradin, Dr. John Maddox, Dr. Theresa Emory, and/or Dr. Siobhan Cashman related to the Steffen Article.

7.    All communications between Dr. Jacqueline Moline and any of the Steffen Article Authors related to the Emory Article.

8.    All communications between Dr. Jacqueline Moline and any of the Steffen Article Authors related to the Moline Article.

9.    All communications between Dr. Jacqueline Moline and any of the Steffen Article Authors related to the Steffen Article.

10.    All Documents and communications with attorneys and/or law firms that represent plaintiffs in Cosmetic Talc Cases related to the genesis, development, preparation, drafting, or submission of the Emory Article. (For avoidance of doubt, Pecos River states that it is not requesting communications between Dr. Moline and Dr. Moline's own personal attorneys at Marino, Tortorella & Boyle, P.C. [the "Marino Firm"] in connection with their representation of Dr. Moline in LLT Management LLC v. Moline, No. 23-cv-2990 (D.N.J.).) [the "LLT Litigation"]).

11.    All Documents and communications with attorneys and/or law firms that represent plaintiffs in Cosmetic Talc Cases related to the genesis, development, preparation, drafting, or submission of the Moline Article. (For avoidance of doubt, Pecos River states that it is not requesting communications between Dr. Moline and [the Marino Firm] in connection with their representation of Dr. Moline in the [LLT Litigation]).

12.    All Documents and communications with attorneys and/or law firms that represent plaintiffs in Cosmetic Talc Cases related to the genesis, development, preparation, drafting, or submission of the Steffen Article. (For avoidance of doubt, Pecos River states that it is not requesting communications between Dr. Moline and [the Marino Firm] in connection with their representation of Dr. Moline in the [LLT Litigation]).

As the Court can see, the Northwell Subpoena contains no temporal limits. Also, the Northwell Subpoena plainly seeks documents and communications "related to" other scientific articles besides the Emory Article, which is the target of Plaintiff's trade libel claim in the Emory Litigation, including documents and communications with lawyers regarding two of those other articles. And it seeks documents and communications that go beyond the truth or falsity of the statements, set forth above on page 3, at the core of the trade libel claim in the Emory Litigation.

On September 23, 2025, Northwell, which had not yet retained outside counsel to advise it with respect to the Northwell Subpoena, provided responses and objections to the Northwell Subpoena. *See* ECF Doc. No. 4-33. Northwell responded separately to each request, objecting to each one's overbreadth, lack of proportionality, prematurity, and impropriety. *See id.* Northwell noted that "it has not yet been able to obtain counsel. And when Northwell sought an extension of time to obtain counsel and to respond or otherwise object to the Subpoena, Plaintiff Pecos River refused that request." *See id.* at 1. Thus, contrary to Plaintiff's contention, Northwell specifically objected to each request and did not set forth a "litany of boilerplate objections." *See* Pltf's Mem. at 3.

On October 17, 2025, Plaintiff moved to compel compliance with the Northwell Subpoena. For the reasons set forth below, that motion should be denied.[4]

## Argument

### THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE IT SEEKS IRRELEVANT DOCUMENTS THAT ARE NOT PROPORTIONATE TO THE EMORY LITIGATION AND WILL UNDULY BURDEN NON-PARTY NORTHWELL

A discovery subpoena is not a license to set sail on a fishing expedition for documents that might or might not exist, that might or might not bear upon the issues in a case or lead to evidence that might or might not bear upon the issues in a case, and that might or might not be proportionate to the needs of the case. *See Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While Rule 26 (b) (1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' … ."); *see also Rice v. Reliastar Life Ins. Co.*, 2011 U.S. Dist. LEXIS 130302, *9 (M.D. La. Nov. 10, 2011), quoted in *Morocho v. Stars Jewelry by The A Jeweler Corp.*, 345 F.R.D. 292 (S.D.N.Y. 2024 ("a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition."); *State Farm Mut.*

---

[4] In a baseless attempt to paint Northwell as obstructionist, Plaintiff references on pages 14-15 of its Memorandum of Law a separate motion to compel by Plaintiff's parent, Johnson & Johnson ("J&J"), in New York State Court. Plaintiff misstates and mischaracterizes that case. In that case, Northwell originally prevailed and defeated the motion to compel, lost on appeal, won a stay pending its motion for leave to appeal to the New York State Court of Appeals, and then defeated J&J's motion to hold Northwell in contempt. *See Johnson & Johnson v. Northwell Health Inc.*, N.Y. Co. Index No. 153527/2024 (*a*) NYSCEF Doc. No. 81 (Order denying J&J's motion to compel), (*b*) NYSCEF Doc. No. 88 (Appellate Division reversal), (*c*) NYSCEF Doc. No. 93 (Court of Appeals Order staying compliance with the subpoena pending Northwell's motion for leave to appeal, which was denied, and (*d*) NYSCEF Doc. No. 126 (Order denying J&J's motion for contempt and attorneys' fees). Most recently, even though Northwell complied with the J&J subpoena by producing what it had requested, J&J brought a second motion to compel, which Northwell has opposed and which will be heard on November 18, 2025.

*Auto. Ins. Co. v. Khait*, 2023 U.S. Dist. LEXIS 171968, \*9 (E.D.N.Y. Sept. 26, 2023) (overbroad

subpoena seeking documents based on speculation of relevance quashed as a "classic fishing

expedition."). Judge Figueredo put it well in *Phillips Petro. Co. Venezuela Ltd. v. Girard St. Inv.*

*Holdings LLC*, 2025 U.S. Dist. LEXIS 44335, \*6-8 (S.D.N.Y. March 11, 2025), quashing a non-

party subpoena that was, as is the case at bar, overbroad and contained no temporal limits:

> the subpoenas are unduly burdensome and overbroad. First, the non-party status of the
> ConocoPhillips Subpoena Recipients is "significant in determining whether compliance
> with a discovery demand would constitute an undue burden." ... . Here, the non-party
> status of the ConocoPhillips Subpoena Recipients weighs heavily in favor of finding that
> the broad document requests in the subpoenas are unduly burdensome. ... Additionally,
> the subpoenas served on the ConocoPhillips Subpoena Recipients are overbroad in scope
> and time period. Many requests seek "all documents and communications" without a time
> limitation ... and even for the requests where a time limit is provided, the time period
> spans decades ... ***Courts have quashed document requests as overbroad where the***
> ***requests have no limitation as to the relevant time period***. See Hofmann v. Schiavone
> Contracting Co. LLC, No. 11-CV-2346 (CBA), 2012 WL 12925828, at \*2 (E.D.N.Y.
> Nov. 8, 2012) (concluding that document requests in Rule 45 subpoena were "overly
> broad on their face" where they were "not limited in time"); Athalonz, 2024 U.S. Dist.
> LEXIS 65685, 2024 WL 1555685, at \*3 (noting that requests that were not limited by
> time were "indiscriminately broad"). Emphasis supplied.

And yet that is exactly what the Northwell Subpoena is: a huge net that Plaintiff has

tossed into the water, hoping to haul in whatever irrelevant and unnecessary documents might

get caught in that net. Worse, compliance with the Northwell Subpoena will impose a

tremendous burden on Northwell, as the accompanying October 31, 2025 Declaration of

Northwell Cyber Security Analyst Christopher Connolly (the "Connolly Dec.") makes clear and

as discussed below at pages 19-22.

The motion to compel should be denied.

A.    **The legal standards**

Pursuant to Fed. R. Civ. P. 45(d)(1), "[a] party or attorney responsible for issuing and

serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a

person subject to the subpoena." *See Girard St. Inv. Holdings LLC v. Venezuela, S.A.*, No. 23-cv-10772, 2024 U.S. Dist. LEXIS 213885, at *3 (S.D.N.Y. Nov. 20, 2024) (quoting Fed. R. Civ. P. 45(d)(1)). In addition to following Rule 45, the issuing party must also heed Fed. R. Civ. P. 26(b)(1), which further delineates the permissible bounds of subpoenas to non-parties. *See Gilead Scis., Inc. v. Khaim*, 348 F.R.D. 146, 150 (S.D.N.Y. 2024) ("Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1)."). To protect non-parties from undue burden, the party that issues a subpoena bears "'the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case.'" *Girard*, 2024 U.S. Dist. LEXIS 213885, at *3 (quoting *Cohen*, 2022 U.S. Dist. LEXIS 176342, at *7). Even when the issuing party meets that burden, a subpoena "'that pursues material with little apparent or likely relevance to the subject matter . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous.'" *Girard*, 2024 U.S. Dist. LEXIS 213885, at *3-4 (quoting *Kirschner v. Klemons*, No. 99-cv-4828, 2005 U.S. Dist. LEXIS 9803, at *6 (S.D.N.Y. May 18, 2005)).

It is well settled that "[w]hether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. ... ." *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007). As this Court held in *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 U.S. Dist. LEXIS 23179, *23 (S.D.N.Y. Dec. 30, 2003), expanding on the meaning of "undue burden,"

> [w]hether a subpoena imposes an "undue burden" "depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.' Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quoting United States v. IBM Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). The party

11

issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings. ...  Additionally, "the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" Concord Boat Corp., 169 F.R.D. at 49 (quoting Fed. R. Civ. P. 45(c)(2)(B)).

As the Court in *Night Hawk Ltd., supra*, noted, Courts are particularly sensitive to the burdens of document subpoenas on non-parties. *See Adomni, Inc. v. Ct. Media, LLC*, 2024 U.S. Dist. LEXIS 210340, *4, 2024 WL 4981510 (S.D.N.Y. Nov. 19, 2024) ("Within the Second Circuit, 'courts have held nonparty status to be a 'significant' factor in determining whether discovery is unduly burdensome.' In re 650 Fifth Ave. & Related Props., No. 08 Civ. 10934, 2013 WL 12335763, at *2 (S.D.N.Y. Aug. 29, 2013) (citation omitted)."); *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 2024 U.S. Dist. LEXIS 178902, *4, 2024 WL 4355597 (S.D.N.Y. Oct. 1, 2024 ("As it concerns a non-party, courts give 'special weight' to the burden imposed on the non-party from the production of 'documents to parties involved in litigation ... .");  *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information."); *Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) ("Broader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience.").

As discussed below, under these standards, the Northwell Subpoena cannot stand.  It is a fishing expedition.  It is overbroad.  It is tremendously burdensome on Northwell, a non-party. And it is not even close to the sort of targeted, necessary, and proportionate discovery request that a court should authorize.

**B.      Plaintiff did not take reasonable steps to reduce the burden of the Northwell Subpoena on Northwell, as required by Fed. R. Civ. P. 45(d)(1)**

Plaintiff has not shown that it complied with Fed. R. Civ. P. 45(d)(1).  Incredibly, Plaintiff does not even cite Rule 45, the most central Federal Rule of Civil Procedure in non-party subpoena enforcement cases, anywhere in its memorandum of law.  No surprise, then, that Plaintiff does not even attempt to show that it complied with Rule 45(d)(1).  To the contrary, the record is clear that Plaintiff did nothing in response to Northwell's objections to minimize the burden on Northwell.  It stood its ground, obstinately insisting that Northwell provide all of the documents demanded by the Northwell Subpoena.  Most disturbingly, Plaintiff refused to allow Northwell time to retain outside counsel to assist it in respect of the Northwell Subpoena and insisted on a breakneck production date knowing full well the time and resources that would be required to produce the tremendous volume of documents demanded by the Northwell Subpoena.[5]

---

[5]      Plaintiff's excuse, that it is on an accelerated summary judgment motion schedule in the Emory Litigation, is unpersuasive, as Plaintiff does not show or even suggest that it sought to apprise the Emory Litigation court of the broad scope and burdensomeness of the Northwell Subpoena and set the summary judgment schedule in a way that would accommodate Northwell as a non-party to the Emory Litigation.  Nor does Plaintiff explain why it waited until the eve of summary-judgment briefing to issue the Northwell Subpoena when the Emory Defendants' motion to dismiss was decided almost nine months ago, on February 7, 2025.  *See LLT Mgmt. LLC v. Emory*, 766 F. Supp. 3d 576 (E.D. Va. 2025).  In other words, if the Northwell Subpoena were so important, why didn't Plaintiff issue it earlier and, at the very least, make sure it was accounted for in the summary judgment motion schedule?  The answer, of course, is that Plaintiff knows full well the Northwell Subpoena is not important to the Emory Litigation.  Plaintiff nonetheless brought this motion because its veritable army of lawyers evidently favor the sort of over-the-top, "scorched-earth approach to discovery that is not permitted under Rule 1 or Rule 26 principles of proportionality," as this Court stated in *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 U.S. Dist. LEXIS 40029, *6 (S.D.N.Y. March 5, 2025).

## C.    The Northwell Subpoena seeks irrelevant documents[6]

The Northwell Subpoena calls for twelve extremely broad categories of documents supposedly relevant to proving the falsity of the statements identified above on page 3. Each category is overbroad and requests irrelevant documents. Consider:

Request No. 1 calls for the production of "[a]ll Documents and communications related to the Emory Article." This request would capture irrelevant communications that any number of Northwell doctors and staff might have concerning that article, including, for example, any communications between any Northwell doctors, scientists, or staffers who never spoke with any of the Emory Defendants; or any note or document a Northwell doctor or employee might have written to any other Northwell doctor, scientists or staffer who also never spoke with any of the Emory Defendants about the Emory Article. Such communications would be entirely irrelevant to the Emory Litigation.

Request Nos. 2 and 3, which, respectively, call for documents (*a*) "related to any efforts to determine whether any Study Participant or Potential Study Participant of the Emory Article was a subject of the Moline Article" and (*b*) "related to any efforts to ensure" that the subjects of the two articles did not overlap could capture documents and communications that were

---

[6]    As noted above, contrary to Plaintiff's contention, Judge Engelmayer's decision in respect of the Moline Subpoena should not steer this Court's decision in respect of the Northwell Subpoena. Judge Engelmayer resolved a motion to quash only the deposition part of the Moline Subpoena and looked at whether that subpoena, *in general,* sought information relevant to the Emory Litigation. *See* the Moline-Engelmayer Decision, 2025 U.S. Dist. LEXIS 201669 at *8. Judge Engelmayer was not called upon to consider the relevance each document requested, an issue that was not litigated before him but a task that is raised here, *for the first time*, in this case. Moreover, as noted above, Judge Engelmayer did not consider the burden of each request on Dr. Moline other than with respect to the relevance issue. Given the different issues in the two cases, the legal analyses are necessarily different, and, therefore, what Judge Engelmayer decided in respect of the deposition in the Moline Deposition Subpoena Litigation should not control or impact this Court's decision with respect to the Northwell Subpoena.

14

generated by or took place among Northwell personnel but were totally unknown to the Emory Defendants. Such documents would have no bearing on Plaintiff's need to prove actual malice by the Emory Defendants and could not possibly lead to relevant evidence.

Requests Nos. 4-9 call for communications between (*a*) Dr. Moline and any of her representatives, agents, consultants, experts, attorneys, and anyone else acting on her behalf, on the one hand, and (*b*), on the other hand, the Emory Defendants and certain other individuals, including all of their respective representatives, agents, consultants, experts, attorneys, and anyone else acting on her behalf, ***at any time***, so long as the communication relates in any way to the Moline Article, the Emory Article, or another, separate scientific article. These requests call for communications that might have taken place long before any of the subject articles were written or after they were written. They also call for communications between or among colleagues of Dr. Moline, the Emory Defendants, and other scientists and physicians that might relate to the Emory Article but were never revealed to the Emory Defendants and thus could not have entered into their decision to write the Emory Article. As Plaintiff contends that the key issue in the Emory Litigation is "the process the Emory Article authors used to attempt to ascertain any overlap between the subjects of their Article and the subjects of Dr. Moline's similar paper ... ," communications that might relate to the Emory Article but had nothing to do with how the Emory Defendants prepared their article would be entirely irrelevant to the Emory Litigation. *See* Pltf's Mem. at 2.

Lastly, Requests Nos. 10-12 call for "[a]ll Documents and communications" between any attorney or law firm that has ever represented a plaintiff in a cosmetic talc case, at any time, anywhere on the planet, and any other person on Planet Earth, so long as such documents or communications "related to the genesis, development, preparation, drafting, or submission" of

15

the Emory Article, the Moline Article, or another scientific article.  These wildly overbroad

requests call for, by way of example, documents that would reveal discussions between

Northwell's lawyers and Northwell concerning the "genesis" of any of the subject scientific

articles.  These requests also call for internal scientific discussions and analyses of the topics that

were covered in the subject articles, even if those discussions and analyses were never revealed

to the Emory Defendants.  And, again, there is no time limit set, so the request would capture

documents and communications written long after the subject articles were published and thus

never factored into the Emory Defendants' thought processes regarding the Emory Article.

In short, as the Requests seek the production of irrelevant documents, the Requests

should be rejected.[7]  For that reason alone, the motion to compel should be denied, as it is

Plaintiff's burden, before any other issue is considered, to establish the relevance of its requests.

Plaintiff has not met that burden.

**D.      The Northwell Subpoena is not proportionate to the needs of the Emory Litigation**

Even if, for the sake of argument, the Court were to conclude that the Northwell

Subpoena seeks only relevant documents, the motion to compel still should be denied because

the requests are not proportionate to the needs of the Emory Litigation.  Fed. R. Civ. P. 26(b)(1)

---

[7]      Courts are loathe to re-write or prune overbroad document requests.  *See Securitas Elec. Sec., Inc. v. Debon*, 2022 U.S. Dist. LEXIS 38810, *6 (S.D.N.Y. March 4, 2022) ("It is possible that some emails responsive to this request might be producible, but it is not the place of this court to prune an overbroad request for documents."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 2010 U.S. Dist. LEXIS 33430, *35 (S.D.N.Y. April 5, 2010) ("the plaintiffs' requests are grossly overbroad, and I decline to rewrite them."); *Milner v. City of Bristol*, 2020 U.S. Dist. LEXIS 188770, *17 (D. Conn. Oct. 13, 2020) ("Plaintiff expressly objected to this request as overbroad, and yet defendants have made no effort to narrow it. The Court will not rewrite the request on defendants' behalf.").

sets forth "the parameters for reviewing proportionality, namely 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Allstate Ins. Co. v. All Cty., LLC*, 2020 U.S. Dist. LEXIS 176297, *5-6 (E.D.N.Y. Sept. 22, 2020); *see also Gilead Scis., Inc. v. Khaim*, 348 F.R.D. 146, 150 (S.D.N.Y. 2024) ("Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1)."). The Northwell Subpoena is not proportionate to the needs of the Emory Litigation for four reasons.

*First*, the Northwell Subpoena seeks far more than what Plaintiff needs to make out its case in the Emory Litigation and overcome the defenses of the Emory Defendants. As noted above, the central issue to be litigated in the Emory Litigation is whether the Emory Defendants wrote their article with malice. The documents that Plaintiff seeks go far beyond that issue and call for documents that the Emory Defendants never would have seen, such as internal Northwell discussions, communications, analyses, studies, reports, and other documents that Northwell scientists, physicians, and staff thought worthy of consideration. None of those documents would be admissible in the Emory Litigation because none would prove that the Emory Defendants acted with actual malice.

*Second*, Dr. Moline testified this past Thursday, October 30, 2025, in the deposition that Judge Engelmayer directed in respect of the Moline Subpoena, that she had no communications with the Authors of the Emory Article or the lawyers who supposedly "orchestrated" about the Emory Article. *See supra*, p. 3. Moreover, Dr. Moline testified that, despite searching, she did not locate any emails mentioning the Emory Defendants. *See id*. In fact, Dr. Moline testified that she did not communicate with any plaintiff's counsel regarding her own articles, did not

communicate with Dr. Kardin, one of the Emory Defendants, about the Emory Article, and did

not even know the authors of the Emory Article were preparing their own article. *See id.*

*Third*, Plaintiff is pursuing an adverse inference sanction in the Emory Litigation based

on one of the defendants there deleting his emails. *See* the Emory Litigation, ECF Doc. No. 102.

That is, on October 20, 2025, Plaintiff filed a motion for spoliation sanctions against Dr. Kradin,

one of the Emory Defendants, for allegedly "deliberately destroy[ing] evidence" regarding the

Emory Article. *See* the Emory Litigation, ECF. Doc. No. 103, Pltf's Mem. in support of its

sanctions motion. As the Court can see, Dr. Kradin allegedly deleted his emails concerning the

Emory Article. *Id.* If there were such deletions, and if the Court presiding over the Emory

Litigation holds that such deletions warrant an adverse inference that the deleted emails – emails

that presumably would reveal what Dr. Kradin knew about the subject of the Emory Article –

would have supported Plaintiff's case, the need for the Northwell Subpoena disappears or at least

diminishes substantially. But even if that motion is denied, and the Emory Litigation Court does

not impose such a sanction, Plaintiff can still point to the alleged email deletion as evidence of a

guilty conscience, again making the Northwell Subpoena substantially unimportant.

*Fourth*, as discussed more fully below in Section D, the Northwell Subpoena imposes

undue burdens on Northwell. Those burdens are financial, resource-oriented, privilege-related,

and they concern Northwell's obligation to keep confidential highly sensitive medical records.

As discussed above, the Northwell Subpoena is not proportionate to the needs of the

Emory Litigation. And, as discussed below in Section E, the Subpoena imposes an undue burden

on Northwell. Thus, even if the requested documents were deemed relevant, that still would not

warrant compelling Northwell to comply with the Northwell Subpoena.

E.    **The Northwell Subpoena imposes an undue burden on Northwell**

    1.    **The Northwell Subpoena imposes a resource burden on Northwell**

Northwell maintains on a number of electronic platforms the sort of documents and communications that Plaintiff is asking Northwell to search. Those platforms include, primarily, an email archive system, Microsoft Teams, personal share files, also referred to as home share files or "U Drive" files, OneDrive, Department Shares (shared storage), and cell phones. But accessing those platforms to respond to the Northwell Subpoena would be extraordinarily burdensome and way beyond the pale, as Northwell Cyber Security Analyst Christopher Connolly makes clear in his accompanying declaration. *See generally* the Connolly Dec.

As Mr. Connolly explains, he and one other individual are responsible for searching and exporting data per the search queries provided by Northwell's Legal Department or outside counsel. *See* the Connolly Dec., ¶¶ 5-8, 10. Northwell's email archive is a ProofPoint Email Archive. *Id.,* ¶ 11. It contains older legacy email systems and Northwell's current Microsoft 365, a subscription service that includes cloud-based applications such as Word, Excel, PowerPoint, Teams, and OneDrive. *Id.*. In total, Northwell's email archive contains approximately 4.6 billion emails. *Id.,* ¶ 12. Northwell follows a full email retention protocol, which means that no emails are purged from its archive. *Id.,* ¶ 13. Large data sets are extremely burdensome to export from the archive. *Id.,* ¶ 14. When documents need to be exported from large data sets, constant monitoring is required so that the web session for exporting does not time-out. *Id.* Demanding that a non-party search such a huge email universe in response to the sort of unfocused, "give us all your emails from the beginning to today" requests that permeate the Northwell Subpoena is quintessentially burdensome.

19

Search of Northwell's other ESI data platforms would be equally burdensome. *Id., ¶¶* 15-22. Indeed, as Mr. Connolly explains, without a focused set of keywords coupled with specified senders and/or recipients, a full, complete, and comprehensive Microsoft Teams search would be extremely difficult if not impossible given the amount of data that would have to be reviewed. *Id., ¶* 15. Moreover, although most individual Northwell share drives have been migrated to Microsoft OneDrive and are no longer in use, each user in question would have to be queried to confirm that such a migration took place. *Id., ¶* 16. As with Teams, Northwell's OneDrive can be effectively searched and exported only with the aid of specific keywords, which Plaintiff has not provided. *Id., ¶* 17. Whatever documents were exported would have to be reviewed by Northwell's Legal Department and/or outside counsel. *Id.* Northwell departments also maintain shared storage platforms that would have to be reviewed to ensure a full, complete and comprehensive response to the Northwell Subpoena. *Id., ¶* 18. These Department share platforms are not tied to particular users other than pre-defined users for each share platform. *Id.* The requests at issue are thus not suitable for searching on these platforms.

As for the cell phones of Northwell personnel, data from those devices can be extracted; however, Northwell's cell phone data extraction tools require the phone to be in the physical possession of the Northwell IT Security Investigations Department. *Id., ¶* 19. They (Mr. Connolly and one other) would require the user's PIN code to access his, her, or their phone. *Id.* The process is made more difficult because deleted cell phone messages are not easily recoverable with the tools that Northwell has at its disposal. *Id., ¶* 20. A more in-depth extraction can take place only by a third-party vendor with more extensive and expensive data extraction tools. *Id.* Finally, documents are available on individual Personal Share platforms,

commonly referred to as Home Share or U Drive, which are network-tied private data storage platforms. *Id.,* ¶ 22.

As the largest health system in New York, serving three million people annually in New York and Connecticut, with 14,500 providers, 28 hospitals, and over 1,000 care locations, Northwell understandably has a tremendous amount of electronically stored information. *Id.,* ¶ 23. As noted above, Northwell's email archive alone contains 4.6 billion emails. *Id.,* ¶ 23. There are 1,085,000 emails in Dr. Moline's Northwell email archive. *Id.,* ¶ 24. As Mr. Connolly explains, if Northwell were compelled to comply with the Northwell Subpoena, Mr. Connolly and his colleague would be required to review the enormous data storage platforms identified above (email archives, Teams, etc.) for documents responsive to the Subpoena. *Id.,* ¶ 25. As the Northwell Subpoena contains no temporal limits, its requests are filled with entirely vague and ambiguous references to topics such as the "genesis" of an article published in a scientific journal, and there is a complete absence of reasonable search terms, compliance with the Northwell Subpoena would be extraordinarily time-consuming and expensive. *Id.,* ¶ 26. Such a search would require the IT Security Investigations Department to work full time for an indeterminate period of time. *Id.,* ¶ 27. Mr. Connolly explains that he cannot be any more specific in predicting how much time would be required to comply with the Northwell Subpoena precisely because of the Northwell Subpoena's breadth, lack of clear search parameters, and open-ended time frame. *Id.* It is clear, however, based on the volume and extent of Northwell's ESI, the reach of the Northwell Subpoena, and the lack of clarity in the Northwell Subpoena's requests that the burden on Northwell to comply with the Northwell Subpoena would be an unduly burdensome task.

This burden affects not only this case but other cases and other matters in which Mr. Connolly and his colleague are involved. If Mr. Connolly and his IT Security Investigations colleague were tasked with searching for all documents responsive to the Northwell Subpoena, they would be required to put on hold all of the other ESI work they currently are handling for Northwell. *Id.,* ¶ 28. This would adversely affect the demands for current ESI search and extractions by an immeasurable amount. *Id.*

If Northwell were compelled to comply with the Northwell Subpoena, their search for and extraction of responsive documents would be only the first two stages of the process. *Id.,* ¶ 29. After Mr. Connolly and his colleague finished searching for and locating any responsive documents, those documents would need to be reviewed by Northwell's counsel for relevance, privilege, and any other issues that might affect Northwell's obligation to produce them. *Id.,* ¶ 30. To the extent any responsive documents are privileged or otherwise exempt from production, Mr. Connolly and his colleague would be asked to assist in the creation of a privilege log, which, again, counsel would be required to review. *Id.,* ¶ 30.

No wonder Mr. Connolly has concluded that, in his expert and experienced opinion, an Order compelling compliance with the Northwell Subpoena would impose an extraordinarily undue burden on Northwell. And yet Plaintiff asks this Court to be oblivious to that fact and the fact that Northwell is a non-party and to ignore the absence of any relevant time period in the Northwell Subpoena and its evident overbreadth. This Court should reject that request.

## 2.     The Northwell Subpoena calls upon Northwell to produce documents protected by the attorney-client privilege

As discussed above, the Northwell Subpoena is extremely broad and calls for the production of documents that would include attorney-client communications. In particular,

Requests Nos. 1-3 and 10-12 call for the production of various documents "related to" what Plaintiff alleges are issues relevant to the Emory Litigation. Nowhere does the Northwell Subpoena carve out privileged communications. As a practical matter, that means Northwell would be required to pull all potentially responsive documents, excluding none, and then do a comprehensive privilege screen to prepare a privilege log. Given the breadth of the Northwell Subpoena, that log would take time to prepare and would require a substantial amount of legal work. Such a burden is clearly unwarranted.

### 3. The Northwell Subpoena calls upon Northwell to produce highly sensitive medical records

The burden on Northwell goes beyond the financial and resource-oriented. The Northwell Subpoena requires Northwell to produce documents that would invade patients' privacy, the privacy of Northwell employees, the trust and confidence that Northwell has earned from its patients and employees, the integrity of its data and systems, and proprietary, financial, and confidential information. Specifically, by requesting such a broad and unfocused swath of documents, the Northwell Subpoena seeks to impinge on Northwell's HIPAA obligations,[8] its obligations under the "Common Rule,"[9] and the bedrock and widely

---

[8] HIPAA, the federal Health Insurance Portability and Accountability Act (42 U.S.C. § 1320d, *et seq.*), is applicable because the Requests are arguably broad enough to call for the production of the identities of the subjects of medical research who did not consent to having their names revealed. *See also* the HIPAA Privacy Rule, 45 CFR 164.508; 42 USC 290dd-3, 42 USC 290ee-3, and 42 CFR Part 2.

[9] The Common Rule is well-established federal policy aimed at protecting the safety, privacy, and confidentiality of research subjects. It imposes a series of requirements on institutions engaging in human subject research, which is subject to regulation by applicable federal agencies, including the U.S. Department of Health and Human Services ("HHS"). *See* 45 C.F.R. § 46.101. *See also Bell v. Am. Int'l Indus. Inc.*, 2021 U.S. Dist. LEXIS 262389, *8, 2021 WL 9639619 (M.D.N.C. Feb. 25, 2021) ("'the ability to conduct probing scientific and social research supported by a population willing to submit to in-depth questioning' depends on the

accepted Institutional Review Board ("IRB") requirements of confidentiality and privacy.

In that regard, this Court has made clear the importance of maintaining the confidentiality of medical research. *See, e.g., In re Fosamax Prods. Liab. Litig.*, MDL No. 1789, 2009 U.S. Dist. LEXIS 70246, at *35 (S.D.N.Y. Aug. 4, 2009) ("Compelling testimony from a third party researcher risks chilling participation in beneficial public research. . . . There is a serious danger that permitting discovery in these situations 'inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.'" (quoting Sweezy v. New Hampshire, 354 U.S. 234, 262 (1957)).

This Court is not alone in that view. Courts in many other federal jurisdictions have supported the principle that medical research requires confidentiality, and subpoenas that seek to invade that confidentiality should generally not be allowed. *See, e.g., Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1276 (7th Cir. 1982) ("burden of compliance" with a subpoena for research data that supported certain scientific studies "could jeopardize both the studies and [the researchers'] careers"); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546 (11th Cir. 1985) (affirming denial of subpoena for the identities of participants in a Center for Disease Control study where such disclosure would "inhibit future studies by causing the public to fear disclosure of personal information given to the Center"); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1988) (the propriety of a discovery request that

---

guarantee that the researcher will take steps to ensure confidentiality. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). To that end, Congress and the Department of Health and Human Services have implemented a substantial body of law governing ethics and privacy in human-subjects research. See generally The Common Rule, 45 C.F.R. Subpart A; HIPAA Privacy Rule, 45 C.F.R. Parts 160, 164.").

seeks confidential information compiled by an academic researcher must be judged by weighing the "objector's interest in confidentiality and the potential injury to the free flow of information that disclosure portends"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2011 U.S. Dist. LEXIS 132056, at *8-9 (S.D. Ill. Nov. 15, 2011) (denying discovery of confidential peer-review materials because it would impose "a significant burden on the scientific and academic communities" by violating expectations of confidentiality, chill researchers' participation in the peer-review process, and ultimately "undermine efforts to improve public health and safety."); *In re Schaefer*, 331 F.R.D. 603, 616 (W.D. Pa. 2019) (denying discovery where its disclosure could "chill further research into sensitive and consequential issues"); *Fields v. Lilly*, 2:13-cv-0035, 2015 U.S. Dist. LEXIS 191536, at *4 (M.D. Ala. Mar. 26, 2015) (denying request for unpublished manuscript based on the "burden that disclosure . . . would have on the scientific and academic community").

So too here, compelling Northwell to comply with the broad Northwell Subpoena and produce the requested documents would prejudice Northwell, which has a legal and ethical obligation to maintain the confidentiality of much of the information Plaintiff is seeking, in blunderbuss fashion. Thus, if compelled to comply with the Northwell Subpoena, Northwell would risk losing the confidence and trust of its patients, its research subjects, and its physicians, scientists, and staff. Such a result should not be allowed.

### Conclusion

For the reasons set forth above, Plaintiff's motion to compel should be denied, as it seeks irrelevant documents, is not proportionate to the needs of the Emory Litigation, and imposes a colossal burden on Northwell.

Dated: Katonah, New York
       November 3, 2025

                                    Respectfully submitted,


                                    _____
                                    Michael R. Gordon (MG7838)

                                    GordonLaw LLP

                                    *Attorneys for Defendant Northwell Health Inc.*
                                    51 Bedford Road, Suite 2
                                    Katonah, New York 10536
                                    914.232.9500
                                    mgordon@gordonlawllp.com

Gordon Law LLP
Michael R. Gordon, Esq.
51 Bedford Road, Suite 10
Katonah, New York 10536
Telephone:    914.232.9500
Fax:          914.992.6634
Email:        mgordon@gordonlawllp.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------

PECOS RIVER TALC LLC,                    Civil Action No.: 1:25-mc-00456

                    Plaintiff,

        v.

NORTHWELL HEALTH, INC.,                  **CERTIFICATE OF COMPLIANCE**
                                         **WITH LOCAL RULE 7.1(c)**

                    Defendant.

---------------------------------------------------------

        Michael R. Gordon, an attorney admitted to practice before the Courts of the State of

New York and of this Court, hereby certifies that the foregoing Memorandum of Law complies

with the word-count limitations of Local Rule 7.1(c) in that it contains 8,383 words, which is

within the allotted 8,750 words.

Dated: November 3, 2025

                                         _____
                                         MICHAEL R. GORDON