UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PECOS RIVER TALC LLC,

                        Plaintiff,

    v.                                      Civil Action No. 1:25-mc-00456

NORTHWELL HEALTH, INC.,

                        Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO COMPEL NORTHWELL HEALTH, INC.
TO COMPLY WITH SUBPOENA**

**TABLE OF CONTENTS**

     **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.     Pecos River Endeavored To Avoid Burdening Northwell, Only To Be Obstructed By Northwell. ................................................................................................ 1

II.    The Subpoena Seeks Relevant Information. ....................................................... 3

III.   The Documents Requested Are Proportional To The Needs Of The Case. ........................ 5

IV.   Northwell Does Not Carry Its Burden Of Showing That The Subpoena Imposes An Undue Burden. ............................................................................................... 7

V.    Northwell's Privilege And Confidentiality Objections Are Frivolous. ........................... 10

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIU Ins. Co. v. TIG Ins. Co.*,
  2008 WL 5062030 (S.D.N.Y. Nov. 25, 2008) ............................................................................7

*Bell v. Am. Int'l Indus.*,
  627 F. Supp. 3d 520 (M.D.N.C. 2022) ...................................................................................11

*Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*,
  2016 WL 6902140 (S.D.N.Y. Nov. 23, 2016) ..........................................................................9

*In re Children's Inv. Fund Found. (UK)*,
  363 F. Supp. 3d 361 (S.D.N.Y. 2019) ...................................................................................7, 8

*Cooper v. Hill*,
  2016 WL 7366976 (W.D.N.Y. Dec. 20, 2016) ........................................................................3

*DaCosta v. City of New York*,
  296 F. Supp. 3d 569 (E.D.N.Y. 2017) .....................................................................................2

*In re Degens*,
  2020 WL 7360831 (S.D.N.Y. Dec. 14, 2020) ..........................................................................3

*In re DG Acquisition Corp.*,
  151 F.3d 75 (2d Cir. 1998) .....................................................................................................11

*Donovan v. Mehlenbacher*,
  652 F.2d 228 (2d Cir. 1981) .....................................................................................................3

*FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*,
  2005 WL 545218 (S.D.N.Y. Mar. 8, 2005) ............................................................................10

*Int'l Code Council, Inc. v. Skidmore, Owings & Merrill, LLP*,
  2025 WL 1936704 (S.D.N.Y. July 15, 2025) .......................................................................7, 9

*Johnson & Johnson v. Northwell Health Inc.*,
  231 A.D.3d 481 (1st Dep't 2024) .......................................................................................2, 11

*In re Man Grp. Ltd.*,
  2025 WL 846134 (S.D.N.Y. Mar. 13, 2025) ........................................................................3, 8

*Moline v. Pecos River Talc LLC*,
  2025 WL 2898086 (S.D.N.Y. Oct. 10, 2025) .............................................................1, 3, 4, 6

*NLRB v. AJD, Inc.*,
    2015 WL 7018351 (S.D.N.Y Nov. 12, 2015) ................................................................. 8, 9

*Pecos River Talc LLC v. Emory*,
    2025 WL 1888565 (E.D. Va. July 8, 2025) ............................................................. 1, 11, 12

*Securitas Elec. Sec., Inc. v. DeBon*,
    2022 WL 633874 (S.D.N.Y. Mar. 4, 2022) ...................................................................... 8

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006) ....................................................................................... 9

**Rules & Statutes**

45 C.F.R. § 46.101(a) ............................................................................................................ 11

Fed. R. Civ. P. 45(d)(1) ....................................................................................................... 1, 3

L. Civ. R. 26.2 ........................................................................................................................ 10

L. Civ. R. 26.4(b) .................................................................................................................. 1, 2

**Other Authorities**

Northwell Health, *Financial Health and Annual Reports* (Nov. 5, 2025) .......................... 10

*The Sedona Principles*, Principle 11 (2003) ......................................................................... 9

**PRELIMINARY STATEMENT**

This Court's Local Rules sensibly provide that "[d]iscovery requests must be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have the information or can obtain it from the client." L. Civ. R. 26.4(b). Rather than reading Pecos River's requests reasonably, Northwell reads them in the most unreasonable way possible, such as assuming some requests seek communications between talc plaintiffs' lawyers "and any other person on Planet Earth." Opp. 15. Pecos River's requests are narrowly tailored to information Judge Engelmayer already ruled was relevant. The motion to compel should be granted.

**ARGUMENT**

**I.     Pecos River Took Reasonable Steps To Avoid Imposing Undue Burden On Northwell.**

Contrary to Northwell's hyperbole, *see* Opp. 13, Pecos River *did* "take reasonable steps to avoid imposing undue burden or expense on" Northwell. Fed. R. Civ. P. 45(d)(1). Northwell complains that Peco River waited too long to issue its subpoena, *see* Opp. 13 n.5, but that is because Pecos River first tried to obtain responsive documents from the *Emory* defendants and then from Dr. Moline. Those attempts failed. The *Emory* defendants produced the bulk of their documents in mid-July, after Pecos River prevailed on a motion to compel. *See Pecos River Talc LLC v. Emory*, 2025 WL 1888565 (E.D. Va. July 8, 2025). After reviewing that production and determining the types of documents Dr. Moline would likely possess, Pecos River subpoenaed Dr. Moline on August 8, 2025. *See Moline v. Pecos River Talc LLC*, 2025 WL 2898086, at *1 (S.D.N.Y. Oct. 10, 2025). "Dr. Moline notified Pecos River that she had not identified any responsive documents" on "September 4, 2025." *Id.* Moving with alacrity, Pecos River prepared the Northwell subpoena the very next day. *See* Doc. 4-32.

1

Northwell then stonewalled Pecos River's attempts to confer about the subpoena. On September 23, 2025, Northwell served materially identical boilerplate objections to each of Pecos River's requests and did not commit to producing any documents. *See* Doc. 4-33. Pecos River's counsel emailed Northwell—which had not yet retained counsel—to ask whether "there [was] anyone we can speak [with] to see if any agreement can be reached" before filing a motion to compel, Doc. 4-34, only to be met with silence.

As it turns out, Northwell—"the largest health system in New York," Opp. 21—did not retain outside counsel until about a month after service, only to retain the same attorney who has been representing Northwell in connection with subpoenas to Dr. Moline for years. *See* Doc. 4-41 at 2-3; *Johnson & Johnson v. Northwell Health Inc.*, 231 A.D.3d 481 (1st Dep't 2024). Pecos River's counsel then conferred with Northwell's counsel, but Northwell "maintain[ed] the position outlined in" its boilerplate "objection[s]." *Id.* at 1-2.

Northwell cannot simply serve boilerplate objections, delay, obstruct a cooperative discovery process, produce nothing, and then complain that Pecos River "did nothing … to minimize the burden on Northwell." Opp. 13. "Discovery requests must be read reasonably in the recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have the information or can obtain it from the client." L. Civ. R. 26.4(b). "This local rule requests cooperation from the opposing counsel in discovering critical facts, not an avoidance by the monkey[s]: don't see, don't hear, don't say." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 596 (E.D.N.Y. 2017).

Northwell's opposition brief—filed nearly two months after Pecos River served its subpoena—is thus the *first* time Northwell revealed its issues with the subpoena. As discussed below, Pecos River's subpoena is narrowly tailored to seek relevant information and need not be

2

further narrowed. But to accommodate Northwell's newly raised concerns and in Pecos River's continuing efforts to "avoid imposing undue burden or expense on" Northwell, Fed. R. Civ. P. 45(d)(1), Pecos River agrees to limit its subpoena to (i) the "emails in Dr. Moline's Northwell email archive," *see* Connolly Decl. (Doc. 18) ¶ 24, and (ii) the six-year period spanning from January 1, 2017 through December 31, 2022, *i.e.*, a three-year radius surrounding the early-2020 publication of the three articles at issue. Especially with these self-imposed limitations in place, all of Northwell's objections fall flat. *Cf. Cooper v. Hill*, 2016 WL 7366976, at *2 (W.D.N.Y. Dec. 20, 2016) ("Even when courts find problems with requests in subpoenas, they will modify the subpoenas before quashing them altogether if modifications can correct the problems.").

## II.   The Subpoena Seeks Relevant Information.

Northwell does not seriously dispute that, as Judge Engelmayer already concluded with respect to the materially identical document requests issued to Dr. Moline, "the subpoena seeks relevant information." *Moline*, 2025 WL 2898086, at *4. Though Northwell couches its objection as one of relevance, its *real* complaint is that the subpoena supposedly "is overbroad." Opp. 14.[1] None of Northwell's overbreadth objections has any merit.

Initially, most of Northwell's overbreadth objections are now moot. For example, Northwell complains that the first three requests encompass communications about the Emory article by "doctor[s], scientists or staffer[s]" or other "Northwell personnel" who "never spoke

---

[1] Northwell also suggests that Pecos River's requests constitute a fishing expedition because they begin with the phrase "all documents." *See* Opp. 9. But "[a] subpoena need not specify all the particular items sought where"—as here—"they are not all known"; rather, it "may simply require production of all documents pertaining to a specified matter or issue." *Donovan v. Mehlenbacher*, 652 F.2d 228, 231 (2d Cir. 1981). "[W]hether or not 'all documents concerning' terminology renders requests improper is a matter of context and the words that follow." *In re Degens*, 2020 WL 7360831, at *2 (S.D.N.Y. Dec. 14, 2020). Because "the 'words that follow'" in Northwell's subpoena "are narrowly tailored," "concerns [about overbreadth] are not present here." *In re Man Grp. Ltd.*, 2025 WL 846134, at *9 (S.D.N.Y. Mar. 13, 2025).

3

with any of the Emory Defendants." Opp. 14-15. Whatever the merits of that objection, Pecos River has limited the subpoena to Dr. Moline's emails, and Dr. Moline *indisputably* communicated with the Emory defendants. *See* Doc. 4-2; Doc. 4-4; Doc. 4-19; Doc. 4-25.

Northwell complains that requests four through nine—which demand communications between Dr. Moline and the authors of the Emory and Steffen articles about the three articles at issue—are overbroad because (i) they encompass communications from anyone acting on Dr. Moline's behalf, not just from Dr. Moline, and (ii) they call for emails written "at any time." Opp. 15 (emphasis omitted). Even if these complaints had merit, Pecos River's self-imposed limitations cure any such concerns.

Northwell's additional complaint—that these requests may encompass communications "that might relate to the Emory Article but had nothing to do with how the Emory Defendants prepared their article," Opp. 15—is meritless. Such documents are relevant to the "potential coordination among Dr. Moline" and the other authors to manufacture a body of literature for litigation purposes. *Moline*, 2025 WL 2898086, at *3. As Pecos River explained, "[t]hrough Dr. Moline, Northwell has information regarding these coordination efforts that could serve to disprove the Emory Authors' assertions that they prepared their Article for purely altruistic purposes divorced from litigation, which is relevant to the overall context of the case, their motive to recklessly disregard the truth, and also to show that the statements are actionable." Mem. 18.

Finally, Northwell struggles to articulate an objection to the final three requests, which call for communications "with attorneys and/or law firms that represent plaintiffs in Cosmetic Talc Cases related to the genesis, development, preparation, drafting, or submission of the" three articles at issue. Doc. 4-32 at 4-5. Northwell argues that these requests encompass communications between talc plaintiffs' lawyers "and any other person on Planet Earth," Opp. 15, though in reality,

4

the requests as drafted encompass communications between talc plaintiffs' lawyers and Northwell employees—and are now limited to communications that include Dr. Moline.

Northwell also argues that the requests encompass "documents that would reveal discussions between Northwell's lawyers and Northwell concerning the 'genesis' of any of the subject scientific articles" Opp. 16—but if Northwell and its lawyers engaged in such communications "with attorneys and/or law firms that represent plaintiffs in Cosmetic Talc Cases," Doc. 4-32 at 4-5, those documents (i) would not be privileged, and (ii) would likely be *very* relevant to the underlying case.

Last, Northwell argues that these requests "capture documents and communications written long after the subject articles were published and thus never factored into the Emory Defendants' thought processes regarding the Emory Article." Opp. 16. But again, the underlying issues are not so narrow. Communications between Dr. Moline and talc plaintiffs' lawyers concerning "the genesis, development, preparation, drafting, or submission of the" three articles at issue—even after the publication—are relevant to their coordination.

### III. The Documents Requested Are Proportional To The Needs Of The Case.

Northwell argues that the documents requested are not proportional to the needs of the case for three reasons. *See* Opp. 16-18. None has merit.

*First*, Northwell argues that Pecos River seeks documents "that the Emory Defendants never would have seen" and thus "go far beyond" the question "whether the Emory Defendants wrote their article with malice." Opp. 17. That contention is illogical on its own terms. If Dr. Moline wrote an email to a colleague stating: "I told Dr. Emory and her co-authors that their paper overlapped with mine, and they told me they did not care," such an email is something "that the Emory Defendants never would have seen" but one which would be relevant to "whether the Emory Defendants wrote their article with malice." And again, Pecos River's requests *also* pertain

5

to coordination between Dr. Moline, the other authors, and lawyers who represent plaintiffs in talc litigation, which is relevant. *See* Mem. 17-18.

*Second*, Northwell represents that in her recent deposition, "Dr. Moline testified that, despite searching, she did not locate any emails mentioning the Emory Defendants." Opp. 17. That is disingenuous. Dr. Moline testified that she was only able to search her Northwell emails going back "[a]bout two years," *i.e.*, "to at some point in 2023." Doc. 19-1 at 20:1-20. Northwell, however, has access to Dr. Moline's earlier emails: as its eDiscovery declarant explains, "Northwell follows a full email retention protocol, which means that no emails are purged from its archive." Connolly Decl. (Doc. 18) ¶ 13. So, Dr. Moline's fruitless search of her emails from "at some point in 2023" to the present has no bearing on whether Northwell has responsive documents from 2017 through 2022. As Dr. Moline's counsel put it at her deposition, Dr. Moline "doesn't have access to the Northwell documents." Doc. 19-1 at 85:14-19. If anything, Dr. Moline's deposition *proves* that Northwell's production is crucial.

Northwell also argues that Dr. Moline testified "that she had no communications with the Authors of the Emory Article" and that she "did not even know the authors of the Emory Article were preparing their own article." Opp. 17-18. But Northwell cannot rely on Dr. Moline's denials because the record reveals that her testimony was not true. *See* Doc. 4-2; Doc. 4-3; Doc. 4-4; Doc 4-25. Judge Engelmayer already rejected this same argument, concluding: "there is sound reason to question whether her deposition answers were false or misleading. *Moline*, 2025 WL 2898086, at *3

Even when confronted with these emails, Dr. Moline testified that they did not refresh her recollection. *See* Doc. 19-1 at 62:22-64:9, 67:17-68:15, 73:9-74:9, 79:1-17. Dr. Moline asserted that she "get[s] a lot of e-mails," these "things [happened] many years ago," and she "was surprised

6

[she] had even either received them or they had been sent because [she] had no recollection." *Id.* at 45:12-46:5. Dr. Moline's memory issues prove the necessity of Northwell's production. And in any event, Northwell's (unfounded) belief that a "search may be fruitless . . . does not excuse [Northwell] from its obligation to conduct search a search." *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 5062030, at *11 (S.D.N.Y. Nov. 25, 2008).

*Finally*, Northwell argues that Pecos River does not need Northwell's production because Pecos River might secure an adverse-inference instruction based on Dr. Kradin's spoliation. *See* Opp. 18. An adverse-inference instruction is no substitute for hard evidence. And Pecos River cannot be assured it would receive it given Dr. Kradin has opposed Pecos River's spoliation motion. And in that opposition, Dr. Kradin argues that Pecos River was insufficiently diligent at seeking Dr. Kardin's emails from other sources like Northwell. So, it is circular to now say the spoliation motion is a reason not to provide the documents.

## IV.  Northwell Does Not Demonstrate Undue Burden.

As "[t]he objecting party," Northwell "must show specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, *each* discovery request is burdensome by submitting affidavits or offering evidence revealing the nature of the burden." *Int'l Code Council, Inc. v. Skidmore, Owings & Merrill, LLP*, 2025 WL 1936704, at *3 (S.D.N.Y. July 15, 2025) (emphasis added, internal quotation marks omitted). It is not enough to assert that "compliance with [a] subpoena[], generally" would be burdensome. *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 373 n.13 (S.D.N.Y. 2019). Conclusory allegations of the collective burden imposed by multiple requests "fail[] to meet [a subpoena recipient's] burden, because [they] do[] not state how *each request* is unduly burdensome." *Id.*

The recipient must also prove undue burden with *specific* evidence. "General and conclusory objections as to … burden are insufficient to exclude discovery of requested

7

information." *In re Man Grp.*, 2025 WL 846134, at *7 (internal quotation marks omitted). And a subpoena recipient cannot argue undue burden in a vacuum. Rather, it must "show that the actual costs of discovery are unreasonable in light of the particular size of the respondent's operations." *NLRB v. AJD, Inc.*, 2015 WL 7018351, at *5 (S.D.N.Y Nov. 12, 2015).

Northwell fails these standards in every possible way. *First*, Northwell does not establish that a *single* request is unduly burdensome. Instead, its eDiscovery declarant complains that "compliance with the Subpoena"—as a whole—"would be extraordinarily time-consuming." Connolly Decl. (Doc. 18) ¶ 26. This tactic is unsurprising because the individual requests are not unduly burdensome. For example, requests four through six demand communications between Dr. Moline and four specified individuals that concern one of three articles. Doc. 4-32 at 4. It should be trivial for Northwell to search Dr. Moline's emails and determine how many emails she traded with those four individuals. *Cf. Securitas Elec. Sec., Inc. v. DeBon*, 2022 WL 633874, at *2 (S.D.N.Y. Mar. 4, 2022) (noting that "the burden of producing … emails [between specified senders and recipients] is slight—a simple search of the 'to' and 'from' fields yields the entire universe of such communications"). But Northwell's declarant did not take even that simple step—and unless Dr. Moline completely perjured herself at her recent deposition, the number of such emails should be limited. Instead, the only metric of substance Northwell's declarant provides is "that there are 1,085,000 emails in Dr. Moline's Northwell email archive." Connolly Decl. (Doc. 18) ¶ 24. But that metric does not satisfy Northwell's burden of showing that *any particular request* is unduly burdensome. *See, e.g.*, *Children's Inv. Fund*, 363 F. Supp. 3d at 373 n.13.

*Second*, even on a collective basis, Northwell's declarant speaks entirely in generalities. He asserts that "compliance with the Subpoena would be extraordinarily time-consuming"; that it would require Northwell's IT team "to work full time for an indeterminate period of time"; and

8

that "an order compelling compliance with the Subpoena would impose an extraordinarily undue burden on Northwell." Connolly Decl. (Doc. 18) ¶¶ 25–31. But he "does not detail, either in terms of cost or man hours, the burden that such a search would impose on" Northwell, and his "conclusory asserts," "devoid of any specifics," do not satisfy Northwell's obligation to prove undue burden. *Int'l Code Council*, 2025 WL 1936704, at *4 (internal quotation marks omitted); *see, e.g.*, *AJD, Inc.*, 2015 WL 7018351, at *4 (burden not met by asserting that subpoena compliance would impose an "'astronomical'" burden requiring "'countless hours'").

Northwell's declarant attempts to excuse his lack of specificity because "there are no agreed-upon search terms." Connolly Decl. (Doc. 18) ¶ 26. That is not an excuse. The reason there are no "agreed-upon search terms" is because, as explained above, Northwell sat on its hands and refused to engage with Pecos River. Moreover, "[e]ven where a legitimate objection to a discovery request exists, such objection does not permit the objecting party to refuse to produce *any* documents whatsoever." *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2016 WL 6902140, at *7 (S.D.N.Y. Nov. 23, 2016) (internal quotation marks omitted). Northwell's refusal to cooperate does not void its obligation to "conduct a diligent search, which involves developing a reasonably comprehensive search strategy" that may involve "'using reasonable selection criteria, such as search terms.'" *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (quoting *The Sedona Principles*, Principle 11 (2003)); *see also Int'l Code Council*, 2025 WL 1936704, at *4 ("[A]ny objection that the requests are overly broad can be addressed through a narrowing of the requests, rather than an outright refusal to search for and produce responsive documents.").

*Finally*, Northwell does not show that any burden is "unreasonable in light of the particular size of [its] operations." *AJD, Inc.*, 2015 WL 7018351, at *5. Nor can it. Northwell is not a mom-

9

and-pop operation. It brags that it is "the largest health system in New York." Opp. 21. Its own website states that it had over *$18 billion* in operating revenue in 2024 alone. *See* Northwell Health, *Financial Health and Annual Reports*, archived at https://perma.cc/ADA8-PTA9 (Nov. 5, 2025). And it is not as if Northwell has no financial connection to the underlying dispute. The underlying action poses the question whether the defendants coordinated with others (including Dr. Moline) to manufacture scientific literature to further all of their financial interests as testifying experts. Northwell profits from this venture: Dr. Moline testified that Northwell has made hundreds of thousands of dollars from her expert work. Doc. 4-22 at 32:8-33:2. That Northwell may have to respond to discovery requests about this business venture is the cost of doing business.

**V.      Northwell's Privilege Objections Are Meritless.**

Northwell justifies its noncompliance by arguing that the subpoena calls for documents protected by the attorney-client privilege, HIPAA, the so-called "Common Rule," and supposed Institutional Review Board confidentiality. Opp. 22-25. These objections are all meritless.

Initially, the local rules require persons asserting a privilege to produce a privilege log. *See* L. Civ. R. 26.2. Northwell did not produce a privilege log, and its "unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005). Even if Northwell had not waived all applicable privileges, its privilege assertions all lack merit.

*First*, Northwell asserts that some of Pecos River's requests may implicate documents subject to the attorney-client privilege, which would require Northwell "to prepare a privilege log" that "would take time to prepare." Opp. 22-23. That is a normal part of discovery, not grounds to avoid a subpoena.

10

*Second*, Northwell argues that the requests "impinge on [its] HIPAA obligations." Opp. 23. But Pecos River explained in its opening brief why Northwell's HIPAA objection is frivolous, *see* Mem. 23-24, and Northwell tellingly fails to respond.

*Finally*, Northwell's invocation of "the 'Common Rule'" and Institutional Review Board confidentiality, *see* Opp. 23-24, is unavailing. As a threshold matter, Northwell did not raise either of these supposed privileges in its boilerplate objections, so they are waived. *See In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (a subpoena recipient must "raise all objections at once …so that discovery does not become a 'game'").[2] The Common Rule applies only to "research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency." 45 C.F.R. § 46.101(a). Northwell does not so much as suggest that Dr. Moline's "study" was conducted by or on behalf of the federal government (it was not), nor does it argue that there was funding or support from the federal government (there was not). Northwell has already conceded as much: "Northwell appears to concede that because Dr. Moline's study was not conducted by or on behalf of the federal government these protections for human subjects do not inherently apply." *Bell v. Am. Int'l Indus.*, 627 F. Supp. 3d 520, 535 n.8 (M.D.N.C. 2022). New York's First Department has similarly ruled that the Common Rule does not apply here. *Johnson & Johnson*, 231 A.D.3d at 482.

And even assuming that these supposed privileges actually exist and were not waived, both of them are rooted—as Northwell concedes—in "maintaining the confidentiality of medical research." Opp. 23-25. But the underlying court has already rejected the notion that disclosure in

---

[2] Northwell's objections asserted a boilerplate "interest in protecting its patients' privacy," *see, e.g.*, Doc. 4-33 at 8, but as the underlying court explained, the subjects of these articles were personal-injury plaintiffs who became known to them "through 'medical-legal consultation practice'"; there is no "patient-physician relationship" at all. *Pecos River Talc LLC*, 2025 WL 1888565, at *8.

this case would chill medical research—because the articles at issue simply comprise retrospective reviews of litigation materials. *See Pecos River Talc LLC*, 2025 WL 1888565, at *9. In fact, the Emory and Steffen Articles explained that they did not even require institutional consent. *See* Doc. 4-1 at 6; Doc. 4-27; *see also* Doc. 4-26 at 11.

## CONCLUSION

This Court should issue an order compelling Northwell to comply with the Subpoena.

Dated: November 7, 2025                     Respectfully submitted,

                                                **KIRKLAND & ELLIS LLP**

By:  */s/ Matthew L. Bush*
       Kristen Fournier
       Matthew L. Bush
       601 Lexington Avenue
       New York, NY 10022
       T: (212) 446-4800
       F: (212) 446-4800
       kristen.fournier@kirkland.com
       matthew.bush@kirkland.com

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I hereby certify that this motion contains 3,447 words in compliance with the word-count limitation set forth in that provision.

Dated: November 7, 2025         /s/ *Matthew L. Bush*
                                Matthew L. Bush